## Case No. 17,544.

### WHITE v. COMMONWEALTH NAT. BANK.

[4 Brewst. 234.]

Circuit Court, E. D. Pennsylvania. Oct. 1, 1866.

BAILMENT—LOSS OF PROPERTY—LIABILITY OF BAILEE—PARTIES—CREDIBILITY.

[1. Though a bailor does not own property bailed, yet, there being no privity of contract between the owner and bailee, and the bailor having, as between himself and the bailee, represented the interests of the owner, the bailor may sue the bailee for loss of the property.]

[2. The interest of a party in the result should be considered on the question of his credibility.]

[3. One depositing in a bank without notice of its by-law that special deposits for safekeeping shall be at the risk of the depositor is not bound thereby.]

[4. Where a bank receives a box for safekeeping, without any special compensation therefor, but merely because the depositor keeps an account with it, it is liable for gross negligence only, which includes the omission of any care indispensable to that proper security of the thing deposited which may be reasonably required according to the usages of men of business; the depositor, however, being entitled to such security, neither less nor more, as the course of business between him and the bank shows to have been mutually intended and expected between them.]

[5. A bank which received a special deposit of a box for safe-keeping has the burden of showing that the loss thereof is not due to its fault.]

[6. A bank which received a special deposit of a box for safe-keeping, though responsible therefor if it is delivered to a wrong person, or is lost or mislaid by the carelessness of an officer or employé thereof, in the course of business, is not responsible, proper care having been observed in the selection of officers and employés, if it is lost through any act of theirs not within the scope of their employment.]

[Action by J. Atlee White against the Commonwealth National Bank of Philadelphia for loss of a special deposit.]

Samuel C. Perkins and Samuel H. Perkins, for plaintiff.

John Clayton and F. Carroll Brewster, for defendants.

CADWALADER, District Judge (charging jury). It appears from the evidence on both sides that the plaintiff was at one time the possessor of two closed boxes, and that both were deposited with the defendants. Of one of the boxes he resumed and has retained possession. Of the other he resumed possession in the beginning of September, 1855. He alleges that through his agent or messenger, Thomas F. Byrnes, this box was returned to the possession of the defendants, and that, when it was afterwards called for, it was missing, and that it has never been recovered. The defendants allege that it was returned to the plaintiff, and never came back to their possession. It is agreed that the contents of this box were unknown to them except when it was occasionally opened as the witnesses have explained. The only part of its alleged contents which are now estimated in assessing the damages claimed are the securities for $6,520 of public debt of the United States.

(The 7th point on which the defendants' counsel has requested instructions from the court applies to other subjects, and will therefore not require consideration.)

On their 6th point I am requested to instruct you that the plaintiff cannot recover for any property belonging to Mrs. Eldridge. In what relation precisely—whether as a trustee or otherwise—he stood towards this lady and other members of her deceased husband's family does not appear. The plaintiff states that the greater part of the securities for the public debt was an investment or reinvestment made by him for her of the proceeds of an insurance upon the husband's life. Between her and the defendants there was no privity of contract. They were strangers to the plaintiff's relations with her, whatever these relations may have been. I think that if, as between himself and the defendants, he represented her interests, the present action may, so far as this objection is concerned, be maintainable upon some of the counts of the declaration. I therefore cannot answer affirmatively the question involved in the defendants' 6th proposition. The controversy will therefore be considered simply as between the plaintiff and the defendants.

The first inquiry will involve points of mere fact. This inquiry is whether the box in question was in truth sent back by the plaintiff, and never was returned to him, and whether it contained the securities in question. Here the defendants' counsel in their first and second propositions requested me to instruct you that although the plaintiff has been allowed to testify in this case, yet his credibility is entirely for your consideration, and that in weighing his credibility you should

consider his direct interest in the result, the statements made in court and before the commissioner when his deposition was taken, and all the other evidence. These propositions are, of course, correct. Such considerations must be proper wherever parties are, under the recent act of congress, admitted as witnesses. In this case the principal, if not the only, testimony as to the contents of the box has been from the plaintiff himself. This testimony should be considered with caution; but, if it is believed by the jury, they will give to it the effect to which they may think it entitled. As to the return of the box to the bank, independently of the questions of its contents, the evidence of the plaintiff would, if it had stood alone, seem to be altogether contradicted by the testimony of Mr. Depuy, the teller, and Mr. Zeilin, a clerk, in the defendants' bank. But here the plaintiff's testimony seems to be strongly confirmed by that of Mr. Byrnes, who is apparently the most reliable of all the witnesses who have been examined. I have no doubt that Mr. Depuy and Mr. Zeilin testify each what he sincerely believes to have occurred. But I cannot doubt that the memory of each of them is, in some respects, defective, and that each of them has testified with rather undue confidence in the accuracy of his own recollection. The same remark applies, I think, with equal, and perhaps greater, force to parts of the testimony of Mr. White, the plaintiff. All three of them seem to have been thus unduly confident on points upon which it is quite impossible to reconcile the whole testimony of any one of them with any probable theory of its complete truth. I do not think that any such remark is justly applicable to the testimony of Mr. Byrnes. He seemed to understand the precise distinction between what he actually recollected and what he may have, independently of his own recollection, believed. The latter he did not intrude. The former he stated with distinctness. But all these remarks are upon questions of mere fact, which it is for you, and not me, to decide. Unless you believe that the contents of the box were as the plaintiff states them to have been, and believe that it was not returned to him, your verdict will be for the defendants. But if, in these respects, you believe what he states, it by no means follows that your verdict is to be in his favor. On the contrary, if you fully believe all that he states, the proper decision of the case will depend upon subsequent inquiries of great importance and general interest. In prosecuting these inquiries it will be assumed that the box was never returned to the plaintiff, and that it contained the securities in question.

The propositions which are stated by the plaintiff in his first point and by the defendants in their last point may be considered together. Here the counsel of the plaintiff requests me to instruct you that if he was a depositor in the bank of the defendants, and on account of his keeping a deposit there they received the box for safe-keeping, there was a sufficient consideration to prevent the contract from being a mere gratuitous bailment. Upon this point I answer that in the case here assumed there was a sufficient consideration to make the deposit an obligatory contract of bailment. Thus far the contract was not gratuitous; that is to say, was not founded upon insufficient consideration. How far it was, in another sense, gratuitous, or without valuable compensation,—that is to say, how far it was a bailment for the exclusive benefit of the depositors,—is not of any practical importance except upon the question of the extent of the obligation which the bank incurred. This question concerns the degree of care which the defendants were bound to use. The question is thus not that of obligatoriness of the contract, but that of the proper measure of the obligation incurred. This question is more easily answered when stated in another form. In this form the proposition will be, what is the degree or measure of the negligence or want of care for which the depositary is liable? This will be considered hereafter. In the meantime the last point of the defendants will be considered. Here I am requested to instruct you simply that the verdict should be for them. I cannot so instruct you as matter of mere law, because the question is ultimately to be answered not by me, but by you. It may hereafter appear that I think your verdict should be for the defendants. If so, this will be only the impression upon my mind of the facts in evidence. But upon the effect of the evidence you, and not I, must decide. The request of the defendants' counsel on this point is founded, perhaps, upon their by-law which distinguishes deposits of cash from special deposits. To receive on deposit the cash of a customer may perhaps be considered an essential part of the business of the incorporated banks of the United States. But the receipt of a special deposit, like the deposit here in question, though not an unusual part of their business, may be excluded from it; and when it is not excluded may be considered as occasional and incidental only, or as wholly collateral to it. The legislature of Pennsylvania, in recently incorporating a company with authority to receive such deposits, has enacted that nothing in the charter should authorize the company to engage in the business of banking. So, conversely, our banks, as they are ordinarily constituted, may refuse altogether to receive such deposits. When received, the business transacted in respect of them is very different from that other business which is included in what may be called ordinary banking operations. This by-law provides accordingly that the bank shall receive and keep its cash deposits subject to the order of the depositors, payable at sight, and may receive

special deposits at the risk of the depositor. Whether this by-law was admissible in evidence at all, might have been a very doubtful question. On the one hand, the existence of such a regulation might perhaps be supposed to have had some effect in determining the course of business of persons employed in the bank. On the other hand, there is no proof that the plaintiff had any knowledge of the existence of the by-law. Without a knowledge of it, the effect of this contract of deposit made by him could not be influenced by it. In the actual course of the business of this bank, one of the clerks, and perhaps more than one, appears to have referred all applications to make special deposits to the cashier. But others of them have testified that such deposits were made from time to time by customers of the bank, and were taken backward and forward by the customers, who were waited on by either of the tellers, or by the clerks not otherwise engaged. The evidence tends to prove that an average number of twenty or more boxes or packages were thus daily in the vault of the bank, and that the course of business in respect of them was generally the same as that pursued as to the plaintiff's boxes. If this was the case, the character and effect of the contract between him and the bank, as to the box in question, were not determined or influenced by the by-law which was unknown to him. If he had known of it, the question of its effect upon the contract might have been one of some nicety. The words "at the risk of the depositor" serve to distinguish special deposits from those ordinary ones of cash which are not, in any respect or degree, at the risk of depositors. The by-law would not reasonably be interpretable so as to absolve the bank from all care. It could not be understood as excusing fraud, or such willful neglect as would be almost equally bad. How far the definition of culpable negligence might be extended under such a by-law is here unimportant, because the plaintiff was ignorant of its existence. The responsibility of this bank for the special deposit in question is, in this case, the same as if no such by-law existed.

We now approach the question, what is the degree or the measure of the negligence or want of care for which such a depositary is liable? On this question the defendants' counsel, in their 3d and 4th points have stated, perhaps rather too abstractly, certain propositions on which I am requested to instruct you in matter of law. Their 4th point, "that even a bailee for hire or reward will not be liable if the goods are stolen, if he showed that he used due care in the keeping of them," is, of course, in the abstract, perfectly true. The 3d point is "that a mere depositary, without any special undertaking, and without reward, is not answerable for the loss of goods deposited, but in case of gross negligence, which is equivalent to

fraud in its effect upon contracts." Before answering this question I will mention the 5th point of the defendants. This involves a similar proposition to the third. The 5th, is, however, stated, not abstractly, but with a particular application to the case. This proposition is "that the defendant is not responsible unless for gross negligence, to wit, the omission of that care which the most inattentive and thoughtless never fail to take of their own concerns." These three propositions, the 3d, 4th, and 5th, are in language which, though copied from that of judicial decisions, cannot be adopted without some qualifications. At all events, the language must be somewhat qualified in its application to this case. There was no ascertainable valuable compensation to the bank for this receipt or custody of this deposit. If the defendants had received or contracted for any such compensation, they would have been responsible for any want of ordinary care; that is to say, for any want of such care as persons of diligence and prudence would take of their own interest in a like case. The present was not such a case. The obligation of the defendants was, therefore, less than can be measured by the same standard of care. We must, therefore, seek a less elevated standard in defining the degree of care which is required of such a special depositary. In order to find the proper standard, we endeavor to make a corresponding change in defining the degree of negligence for which the depositary is responsible. But here, from the infirmity of language, difficulties are encountered. There is no difficulty in saying that the depositary is liable for gross negligence. We may also say that he is liable only for gross negligence. But here we must qualify this phrase by ascertaining the definition of "gross." What negligence is · gross? The language of judges, like that quoted in the propositions of the defendants' counsel, has been criticized by other judges. One English judge, afterwards lord chancellor, said that he could see no difference between negligence and gross negligence; that it was the same thing, with the addition of a vituperative epithet. This was perhaps going too far from the other side. I will instruct you that the defendants, as special depositaries, were liable for gross negligence only. But I qualify the instruction by adding that the measure of responsibility must not be so lax as to authorize the omission of any care which is indispensable to that proper security of the thing deposited, which may be reasonably required according to the usages of men of business. I will add a qualification which may enlarge or diminish the measure of responsibility. This qualification is, I think, of especial importance in this case. The qualification is that the depositor is, in all cases, entitled to such security. neither less nor greater, than the

course of business between him and the depositary shows to have been mutually intended and expected between them. The application of this remark will be made hereafter.

There are two of the plaintiff's points which, in my opinion, involve the principal questions of the case, namely, the third point and the second point. I will consider them inversely to the order in which they have been put. The third point is as follows: "That, the receipt by the defendants of the box having been shown, the burden of proof of showing what became of the box is on the defendants." I think this is so; but there arises then the vital question, how are they to relieve themselves from this burden of proof; and what will be the effect if they have so relieved themselves? There is no difficulty in this case in determining whether the defendants have relieved themselves from the burden of proof. They have proved that their cash and assets have not been in excess of what they ought to have been; nor has there been any deficiency; that their officers and clerks were all men of integrity; they have given a complete list of all—president, cashier, all the clerks, messenger, and watchman; they have proved that no depredations occurred, and that no one of these persons was concerned in the abstraction of the box, or knows of the box or of its abstraction, so far as negatives can be proved; and that plaintiff had unusual means of knowing how his box was dealt with. If this be so, it is for you to say whether the burden of proof cast upon a depositary can ever be met if it has not been met in this case; and whether, if you say it has not been met in this case, you do not turn the depositary into an insurer. Such care was taken of the box in this case as was consistent with the use the depositor wished to make of it; he wished to take it backwards and forwards. Agreeing, as I do, that the burden of proof in this case is cast upon the depositary, I leave it to you to say whether there can be conceived a case where the depositary has more conclusively relieved himself of the burden of proof if a negative can ever be proved. If any one of the employés of the bank had been dead, it might have embarrassed us: but all are alive and called as witnesses. I don't put it as a matter of law, but as a question of reason in a business point of view; if you never allow a depositary to relieve himself of responsibility but by the production and redelivery of the deposit, you make him an insurer.

The only point which seems to me to remain in order that this whole subject may be exhausted is to the inquiry whether there may not be an uncertainty that the box has been lost or mislaid. If, then, the defendants have relieved themselves of the burden of proof, I will come to the plaintiff's second point, namely: "That, if the plaintiff's box was delivered to a wrong person, or was lost or mislaid by a default or mistake, or by the carelessness or misconduct, of any of the officers or clerks of the bank, the bank is responsible for the box and its contents." I instruct the jury as requested by the plaintiff on this point, with this qualification: that if the mistake, accident, carelessness, or misconduct was not in the course of business of the officers or clerks, and proper care had been observed in selecting honest and faithful clerks and officers, and the defendants have relieved themselves in all other respects of the burden of proof cast on them, as is stated under the defendants' third head, the defendants are not responsible. It is expressly decided in the case of Foster v. Essex Bank, 17 Mass. 479, where there was an embezzlement by the cashier of the bank of a portion of a special deposit of gold coin. And Judge Story, in his Commentary on Bailments, remarking upon this case, states that the court decided that the responsibility of the bank was the same as if the theft had been committed by a stranger; for there was no want of diligence on its part in selecting proper officers, and the act of embezzlement was not within the scope of the duty of the cashier as agent of the corporation. So far as the conjecture—for it is nothing more—is concerned, that the box might have been lost or mislaid, you see that, unless it was a mistake or misconduct of the officers in the course of their business as officers of the bank, or unless there was some fault traceable to the corporation, this point must be answered in the negative. You are sworn to decide according to the evidence; and if you believe that the defendants have relieved themselves of every burden of proof which could be reasonably required of them, and there remains no evidence to show fault on their part, or mistake or carelessness or misconduct of any of their officers or clerks, your verdict must be for the defendants. For myself I can not see—though it is entirely for you—anything in the evidence in this case which will justify a verdict for the plaintiff.

The plaintiff thereupon suffered a nonsuit.